ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONATHAN U. LEE (CABN 148792)
LAUREN M. HARDING (CABN 308029)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jonathan.Lee@usdoj.gov
    Lauren.Harding@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 23-191-AMO |
| Plaintiff, | UNITED STATES' APPEAL AND MOTION TO REVOKE THE MAGISTRATE COURT'S PRE-TRIAL RELEASE ORDER FOR DEFENDANT GARLAND RABON |
| v. | |
| GARLAND RABON, | Date: May 13, 2024 |
| Defendant. | Time: 2:00 p.m. |

**TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................................1

MOTION TO REVOKE RELEASE ORDER ....................................................................................1

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL HISTORY....................................................................................................1

III. APPLICABLE LEGAL STANDARDS .................................................................................2

    A. This Court's review is *de novo* ................................................................................2

    B. Crime Victims' Rights Act standards .......................................................................2

    C. Bail Reform Act standards.......................................................................................2

ARGUMENT .......................................................................................................................................3

    A. The nature and circumstances of the offenses charged demonstrate the danger the defendant poses to the community (18 U.S.C. §§ 3142(g)(1) and (4))..........................3

    B. The weight of the evidence against the defendant is overwhelming (18 U.S.C. § 3142(g)(2))..............................................................................................................4

    C. Defendant's conduct shows his lack of respect for the law and lack of amenability to supervision (18 U.S.C. § 3142(g)(3)) ..........................................................................11

        1. Ghost Town membership and allegiance................................................................12

        2. Charged new law violations while under supervision ...........................................12

        3. Uncharged new law violations while under supervision .......................................13

    D. Defendant is a flight risk..........................................................................................13

    E. Defendant's sureties and custodian will not be able to monitor, check or prevent his conduct. ....................................................................................................................14

CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Dominguez*,
  954 F.3d 1251 (9th Cir. 2020) .................................................................................................. 3

*United States v. Hir*,
  517 F.3d 1081 (9th Cir. 2008) ................................................................................................ 16

*United States v. Koenig*,
  912 F.2d 1190 (9th Cir. 1990) .................................................................................................. 2

*United States v. Motamedi*,
  767 F.2d 1403 (9th Cir. 1985) .................................................................................................. 2

**Statutes**

18 U.S.C. § 1951(a) ....................................................................................................................... 1

18 U.S.C. § 3142(e) ....................................................................................................................... 2

18 U.S.C. § 3142(f) ........................................................................................................................ 2

18 U.S.C. § 3142(g)(2) ................................................................................................................ i, 4

18 U.S.C. § 3142(g)(3) .............................................................................................................. i, 11

18 U.S.C. § 3145 ............................................................................................................................ 1

18 U.S.C. §§ 3142(g)(1) ............................................................................................................. i, 2

# NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 13, 2024 at 2:00 p.m., or on a date and time suitable to the Court, the United States, pursuant to 18 U.S.C. § 3145, will and hereby does appeal the magistrate court's release order issued on May 1, 2024, and moves this Court for entry of an order revoking the magistrate court's release order. The United States further moves this Court to extend the stay of the magistrate court's release order, if necessary, until such time as this motion can be heard.

# MOTION TO REVOKE RELEASE ORDER

## I.   INTRODUCTION

Plaintiff United States of America, by and through its counsel of record, hereby moves to revoke the order granting pre-trial release to defendant Garland Rabon. The motion is based on both danger to the community and risk of flight. The nature of the offense charged, the weight of the evidence supporting the charge, and defendant's personal characteristics, all demonstrate that the defendant poses a danger to the community and a risk of nonappearance at future proceedings that cannot be mitigated by any release conditions. This Court determines whether to grant conditions of release de novo. Therefore, the United States will offer in support of its motion information provided at the May 1 hearing as well as additional evidence demonstrating danger to the community and to particular persons and risk of flight. The defendant should be detained.

## II.   PROCEDURAL HISTORY

The Grand Jury returned a Superseding Indictment charging four defendants including Mr. Rabon with conspiracy to commit robbery in interference with interstate commerce as members and associates of the Ghost Town gang, a violent criminal gang based in Oakland and operating across the entire Bay Area region. The Superseding Indictment also charged defendants with substantive counts of robbery in interference with interstate commerce, in particular against Mr. Rabon, a robbery in San Pablo on November 12, 2022 and a robbery in Oakland on December 24, 2022. These charges are violations of 18 U.S.C. § 1951(a) ("Hobbs Act Robbery" herein).

Mr. Rabon sought release conditions and two days later, the hearing took place on May 1, 2024.

The Honorable Donna M. Ryu found that conditions of release could mitigate the danger that the defendant posed to the community. Judge Ryu ordered the defendant released to his mother's address in Oakland, on house arrest, with his mother acting as custodian and his mother, stepfather and two sisters all signing an unsecured bond in the amount of $100,000. Judge Ryu also stayed the release order until 12 noon on May 2, 2024, to permit the United States to weigh bringing this appeal.

## III.    APPLICABLE LEGAL STANDARDS

### A.    This Court's review is *de novo*

The district court's standard of review is *de novo*: "[A] district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990).

### B.    Crime Victims' Rights Act standards

Crime victims have the right to be heard in this proceeding. Section 3771(a)(4) of Title 18 provides: "A crime victim has the following rights … (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." Furthermore, section 3771(a)(8) provides that a victim of crime has the right to be treated "with respect for the victim's dignity and privacy."[1]

### C.    Bail Reform Act standards

The Bail Reform Act of 1984 (the "Act") allows detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

---

[1] In light of these rights, the United States presents redacted statements from victims opposing release under seal.

UNITED STATES' APPEAL AND MOTION TO REVOKE PRE-TRIAL RELEASE ORDER
CR 23-191 AMO                                              2

**ARGUMENT**

    **A.**    **The nature and circumstances of the offenses charged demonstrate the danger the defendant poses to the community (18 U.S.C. §§ 3142(g)(1) and (4))**

Mr. Rabon's conduct was violent. These were two takeover-style, armed robberies where the robbers forced their way into vulnerable small businesses, brandished firearms, struck their victims with the firearms as they deemed necessary, and quickly made off with valuable inventory of either jewelry, coins, or cannabis products. In the November 2022 San Pablo robbery of H Bee Jewelry, the security video shows this conduct in horrifying detail. *See* Lee Declaration, para. 5, Exhibit B. The owner is put on the ground at gunpoint and threatened, his employee is pulled from the toilet at gunpoint and put on the ground, and his elderly mother is heard screaming in helpless anguish as their business is looted within a few short minutes. In the December 2022 Oakland robbery of Joyus, the employee closing up for Christmas is carjacked and taken back inside the business at gunpoint, forced to walk throughout the business to find the inventory, and eventually pistol-whipped before the robbers fled with bags of marijuana. Photos from the security video from Joyus are incorporated below.

The victims were terrified, and they continue to suffer the adverse effects of his and his co-conspirators' conduct. *See* Administrative Motion to Seal, Exhibits A and B. There are victims who are reluctant to inform this Court of their feelings because of their fear. The victims have submitted statements here. They will be filed under seal to protect their privacy. In general, the victims report that this incident had a life-changing impact on them. Some of the victims are immigrants, all of them are operating small businesses that are now struggling, and one of the victims is elderly. The elderly victim has needed medical treatment for stress related to the incident, which exacerbated underlying serious medical conditions, according to family members. All of the victims experience adverse effects including stress, anxiety, difficulty sleeping and concentrating, feelings of being afraid about what is going to happen every day. Their businesses have suffered. Employees have quit because of the perceived danger of repeated robberies and retaliation by the gang. These victims are extremely fearful of this defendant and his co-conspirators. They understand this was a gang-related crime, and they know there were more than four robbers so some have not yet been charged. The victims feel fear that

release, even on conditions set here, will mean they are in greater danger than if Mr. Rabon were detained.

Mr. Rabon's conduct was a crime of violence. *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020) (holding Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)). Crimes of violence pose a greater risk of danger to the community. A person who is willing to plan and coordinate with others the violent takeover robbery of a small business is not someone who cares about the safety of the community or the risks of harm from using firearms to gain control over others. Mr. Rabon was there at the scene of both robberies and he later boasted on social media by wearing or displaying stolen articles of property from H Bee and from Joyus.

Mr. Rabon and his co-conspirators committed these crimes are members of the Ghost Town gang. Oakland's Department of Violence Prevention[2] has concluded that the Ghost Town gang is among the three groups "responsible for the majority of group-driven violence" in Oakland, including the gun violence that has exploded in recent years. *See* Oaklandside, "Oakland violence prevention efforts get boost from $6 million state grant," Aug. 2, 2022, https://oaklandside.org/2022/08/02/oakland-violence-prevention-efforts-get-boost-from-6-million-state-grant/[3]

### B. The weight of the evidence against the defendant is overwhelming (18 U.S.C. § 3142(g)(2))

The Ninth Circuit has explained that the weight of the evidence is an important factor in this analysis, but the least important factor. Here, the weight of the evidence is overwhelming.

H Bee Robbery:

First, the cell phone location information associated with Mr. Rabon's two cellphones (-2900 and -8069) place them at or near the robbery, and in the same or similar locations as other robbery suspects before and after the robbery. Specifically, on November 12, 2022:

---

[2] During the time of the offenses alleged in the Superseding Indictment, Mr. Rabon was apparently employed at the same Department of Violence Prevention in some capacity, which heavily weighs in favor of his detention.

[3] At the May 1 hearing, the parties discussed the Ghost Town territory. The government's position is that Ghost Town territory remains important, and rivals intruding there will be subject to deadly violence for example, but it is an antiquated notion to conceive of this gang as operating only in that territory. Instead, Ghost Town is responsible for shootings, robberies and other crimes across a wide swath of the Bay Area.

UNITED STATES' APPEAL AND MOTION TO REVOKE PRE-TRIAL RELEASE ORDER
CR 23-191 AMO                                    4

- In the morning, Mr. Rabon's phone was in the same vicinity as co-defendants Jenkins and Barnett in Tracy/Mountain House.
- 1 hour before the robbery, Mr. Rabon's phone was near an apartment address in Oakland near Jack London Square. Barnett's and Jenkins' phones were also present.
- Around 3:10 p.m., Mr. Rabon's phones (-2900 and -7069) were located around the site of the license plate theft in Ghost Town gang territory.
- Mr. Rabon's phone (-2900) traveled to San Pablo from 3:29 p.m. to 3:53 p.m, and his phone was located near H Bee at the time of the robbery (from ~3:53 to ~4:00 p.m.).
- After the robbery, Mr. Rabon's phones (-2900 and -7069) were again located near the Oakland apartment address, as were Barnett's and Jenkins' phones.

Second, toll records associated with the suspects' phones show Mr. Rabon's advanced coordination with others before the robbery.

Third, the evidence connects Mr. Rabon to a getaway car used during the robbery. Specifically, surveillance footage from the H Bee robbery shows one of the two getaway cars is a black Dodge Charger Hellcat. Mr. Rabon's Instagram account ("gmoneyyttg") includes photos taken before the H Bee robbery showing the interior of a car that matches the interior of a Dodge Hellcat (and, in particular, a hood scoop, a distinctive dashboard, and a sunroof). An Instagram video of Mr. Rabon, in which Jenkins is driving, also references a "Hellcat."

  

| SURVEILLANCE FOOTAGE SHOWING DODGE HELLCAT (TOP) | IG VIDEO OF RABON AND JENKINS REFERENCING A "HELLCAT" | EXAMPLE IMAGE FROM RABON'S IG SHOWING HOODSCOOP SIMILAR TO HELLCAT |

Fourth, in Instagram photos from Mr. Rabon's account, he is seen wearing a distinctive octagonal-shaped pendant necklace. *See images below.* There was a necklace similar to this one that was stolen from H Bee on November 12, 2022.



In the image below, taken at Aramiya Burrell's birthday party in December 2022, Mr. Rabon is shown with co-defendants Jenkins and Barnett. All three men were wearing jewelry stolen from H Bee.

UNITED STATES' APPEAL AND MOTION TO REVOKE PRE-TRIAL RELEASE ORDER
CR 23-191 AMO                                                              6



Location data from Mr. Rabon's phone records show he traveled from Oakland to San Pablo just before the robbery and that he used the phone at or near the jewelry store during the robbery. The same call detail records also place Mr. Rabon's phone in the area where one of the license plates was stolen that was used on a getaway car.

<u>Joyus Recreation and Wellness Robbery</u>:

On December 24, 2022, at around 6:26 p.m., a group of six hooded and masked men walked into a marijuana nursery in Oakland intending to rob it of "cash" and "budded weed." The warehouse they targeted was Joyus Recreation and Wellness Group LLC ("Joyus") located at 2430 Union Street in Oakland.

At the time of the robbery, a lone employee was working at the location and had just left the building and entered his white truck, parked immediately in front of the store. As seen on surveillance footage, nearly immediately after the employee entered his truck, two other cars—a dark grey Jeep and a black sedan—blocked the truck in. Two hooded and masked men then approached the employee at gunpoint and ordered him out of the truck. After he complied, the men searched his person and took from his pockets a Wells Fargo debit card, iPhone, drivers license and $100 in cash.

Surveillance footage shows six masked and hooded men entered the business with the employee,

while two others remained outside in the getaway cars.  Inside the business, the six suspects directed the employee around the store by pointing guns at him and holding the back of his shirt.  *See image below.*  In total, three different men are seen brandishing firearms in the surveillance footage.




Inside the store, the men repeatedly asked, "Where is the budded weed?" and "Where is the money?"  The suspects ordered him to unlock the vault (a converted shipping container), which the employee did.  While at the vault, one of the men placed the employee in the prone position and used a foot to keep him on the ground.  At one point, one of the men "pistol whipped" the employee with a black handgun.  Officers later found a 2" laceration on the top right of his forehead.  The robbers took plastic bags filled with marijuana.  As described below, at 9:02 p.m.—just 2.5 hours after the robbery, Mr. Rabon posted a picture of himself holding a clear plastic bag of a substance that resembles marijuana.  When the six suspects were in the office inside Joyus, someone yelled "police" and the suspects fled.  Surveillance footage then shows the entire group leave in the two getaway cars, which had been waiting outside Joyus.

The evidence demonstrating Mr. Rabon's commission of this robbery is also strong.

First, cell phone location information associated with Mr. Rabon's two cellphones (-2900 and -8069) places them at or near the robbery, and in the same or similar locations as other robbery suspects before and after the robbery.  Specifically, on December 24, 2022:

- Around 1.5 hours before the robbery, Mr. Rabon's phone (-2900) was located at or near the same Oakland apartment address utilized before the H Bee robbery.
- 0.5 hours and 5 minutes before the robbery, respectively, Mr. Rabon's two cell phones (-2900 and -8069) were located at or near Joyus.
- Both of Mr. Rabon's phones (-2900 and -8069) were located at or near the same Oakland apartment as before the robbery, immediately after the robbery.

Second, toll records associated with the suspects' phones show Mr. Rabon's advanced coordination with others before the robbery.

Third, evidence connects Mr. Rabon to getaway cars used during the robbery. Specifically, surveillance footage from the Christmas Eve robbery shows a dark gray Jeep Grand Cherokee. *See image below.*


STOCK IMAGE OF A 2022 JEEP GRAND CHEROKEE


SURVEILLANCE FOOTAGE FROM JOYUS SHOWING GETAWAY CAR

Mr. Rabon's Instagram account ("gmoneyyttg") includes photos of the interior of a car that matches stock images of the interior of a Jeep Grand Cherokee (and, in particular, with a large sunroof split in the center with a black line). *See images below.*

 
STOCK IMAGES OF THE INTERIOR OF JEEP GRAND

UNITED STATES' APPEAL AND MOTION TO REVOKE PRE-TRIAL RELEASE ORDER
CR 23-191 AMO                                                9

On December 23, 2022, Mr. Rabon rented a 2022 Jeep Grand Cherokee from Enterprise.

Fourth, Mr. Rabon's Instagram account ("gmoneyyttg") includes an Instagram story on December 24, 2022 at 12:06 p.m. (6 hours before the robbery) and 9:02 p.m. (2.5 hours after the robbery) showing Mr. Rabon wearing a gray hooded sweatshirt with blue lettering and two necklaces that are silver and gold with an octagonal pendant. In one of the photos, he is also seen possessing a black firearm. In these Instagram stories, he appears to be wearing the same clothing as the suspect that drove the Jeep during the armed robbery.

*Surveillance footage from December 24, 2022 showing driver of Jeep*

  

*Instagram photos from before the robbery on December 24, 2022*



Fifth, on Mr. Rabon's Instagram, at 9:02 p.m. on December 24, 2022, he is holding a clear plastic bag of what appears to be marijuana.

*Original*     *Made brighter*



Although this factor is generally regarded as the least important, it is still important, especially where, as here, the evidence of defendant's conduct is overwhelming.

**C.  Defendant's conduct shows his lack of respect for the law and lack of amenability to supervision (18 U.S.C. § 3142(g)(3))**

Mr. Rabon's lack of respect for the law weighs heavily in favor of his detention.

### 1. Ghost Town membership and allegiance

First, there is Mr. Rabon's membership in and allegiance to the Ghost Town gang. Lee Decl, Exhibit C. The youtube video shows Mr. Rabon using hand signs and demonstrating how to use hand signs to others. https://youtu.be/JKOsDuoqm7s?si=2eyvjzzn47DGzXYJ Ghost Town is a violent street gang based in Oakland that engages in shootings, murders, robberies, burglaries, and narcotics dealing. Recent cases against members of the gang establish this point. Ghost Town gang member Antoine Ford is facing federal 922(g) charges in connection with a homicide in September 2022. *See* 4:23-cr-060 HSG (N.D. Cal.). Shaun Jones is facing felon in possession and narcotics distribution charges in the Eastern District of California. *See* 2:23-cr-00114 KJM (E.D. Cal.). Three other gang members—Eric Coleman, Isaiah Richard, and Herbert Toussaint—are facing attempted murder charges in state court in connection with a June 2019 shooting. *See* 20-cr-12185A, B, C (Cal. Super. Ct.). Still three others gang members—Marsean Hackett, Jeremiah Richard, and Steve Jackson—pleaded guilty to attempted murder charges in connection with a January 15, 2020 shooting. *See* 20-cr-005810A, B, C (Cal. Super. Ct.). Mr. Rabon pledges allegiance to the same gang as those violence drivers and that has been labelled as among the three groups "responsible for the majority of group-driven violence" in Oakland. Social media posts of Mr. Rabon explicitly referring to "Ghost Town" highlight that he is unabashed in affiliating with such a violent gang. For example, on July 30, 2023, Mr. Rabon wrote the caption "Til death do us apart I'm with the gang I took my vows" on a music video he reposted. *Id*., Exh. C. This is one of many examples of Mr. Rabon's allegiance to the Ghost Town gang, confirmed by his statements admitting as much, using gang hand signs, and issuing statements of loyalty and affection to other members of the gang, in some cases those who are deceased or incarcerated.

### 2. Charged new law violations while under supervision

Second, there is Mr. Rabon's committing law violations while on probation. At the time of the H Bee and Joyus robberies, Mr. Rabon had pending charges in Solano County for illegal firearms possession in a July 2021 incident. Lee Dec., Exh. E. In that incident, Mr. Rabon was in possession of a Glock handgun loaded with hollow point rounds at a family amusement business in Fairfield, California. *Id*. Exh. F. He pled guilty to being a felon in possession and in May 2023 received a sentence of six

months jail and two years probation. *Id*. Exh. G. The fact that these two Hobbs Act robberies took place while Mr. Rabon was on pretrial release weighs heavily against his release here.

Mr. Rabon has committed law violations while on probation before this case. He was sentenced to two years probation from September 2016-September 2018, three years probation from May 2016-May 2019, and three years probation from June 2019-June 2022. He was under continuous probationary terms from 2016-2022, and yet he committed these new offenses and was convicted, as confirmed by Pretrial Services:

| Date/Place of Offense | Charge/Conviction |
|---|---|
| 8/22/17 – Oakland | First Degree Burglary, convicted 10/16/17 |
| 9/6/18 – Oakland | Felon in Possession of Firearm, convicted 6/28/19 |
| 7/18/21 – Fairfield, CA | Felon in Possession of Firearm, convicted 5/23/23 |

### 3. Uncharged new law violations while under supervision

There is a host of additional uncharged conduct while under supervision. Mr. Rabon posted on social media images of himself with a firearm in the hours just before the Joyus robbery on Christmas Eve, 2022. In his Instagram posts, Mr. Rabon has repeatedly posted his controlled substances for sale, including prices, quantities, and discounts for Black Friday or the end of the year. This conduct occurred while Mr. Rabon was under supervision, either as a probationer or on release from his state case.

In sum, Mr. Rabon's utter lack of respect for the law weighs heavily in favor of his detention.

**D.   Defendant is a flight risk.**

At the May 1 hearing, Mr. Rabon told the court that he did not have a passport. This was one of the factors cited by Pretrial Services in support of its recommendation. What Mr. Rabon did not reveal, however, is that he has posted messages and images where he stated he had a passport and would use it to flee. Lee Decl. Exhibit H. On May 16, 2022, Mr. Rabon posted this message on Instagram:

> I'm so mf juiced all my
> shit came today
> My ssi card
> My social security card

UNITED STATES' APPEAL AND MOTION TO REVOKE PRE-TRIAL RELEASE ORDER
CR 23-191 AMO                                                   13

> And my passport that
> cost me 11,000 of child
> support

Mr. Rabon followed that up with a second message that same day, posting an image of a passport and social security card with the caption:

> All 3 came at once
> Perfect timing
> Fuck Hawaii I'm going far
> As I can afford

At the time of these statements, Mr. Rabon was under a three year term of probation from his Alameda County felon in possession conviction.

Creating and using false identification documents is part of this case. In Count Five of the Superseding Indictment, the charges include a count against a co-defendant who is alleged to have created a fake driver's license bearing the social security number of another person. That co-defendant is Mr. Rabon's co-conspirator in the Hobbs Act Robbery conspiracy and also a Ghost Town member or associate. Mr. Rabon has the ability through his gang connections to make false identification documents.

That Mr. Rabon boasted on social media that he had a passport and would use it to flee is important to the analysis and should have been disclosed to Pretrial Services and the Court. Given Mr. Rabon's deceptive conduct throughout the time period alleged in this case, the Court can draw no comfort from his current representations and can detain him on risk of flight grounds.

### E.  Defendant's sureties and custodian will not be able to monitor, check or prevent his conduct.

Mr. Rabon has a well-developed ability to deceive those around him. He committed the violent Hobbs Act robberies in the Superseding Indictment, for example, while working at the Department of Violence Prevention and while he had pending charges in Solano County. Understandably, his family members have stepped forward to be potential sureties and custodian. But this Court must determine whether they have sufficient moral suasion over this defendant to justify that level of trust over the risk posed by his release. Through no fault of the family, they did not know what Mr. Rabon was capable of

or had done. They did not know him. Yet, despite their lack of knowledge of his criminal conduct, his family claim they know the defendant. This internal contradiction in terms undercuts the release order. Even under so-called house arrest, Mr. Rabon will be permitted to leave for specified reasons. No one will be able to monitor him wherever he goes at all times, should he decide to follow his oath to the gang and rejoin their activities. He has stated that he feels allegiance to the gang, in his social media posting when he did not anticipate the statement would be made to a judge. Those closest to Mr. Rabon, his family, cannot assure this Court that they can effectively monitor Mr. Rabon when there is a demonstrated history over recent years that shows they were unable to do so. Mr. Rabon's position is, of course, that now is different, and his family members echoed this at the May 1 hearing. The government disagrees. Where the record evidence shows there is no moral suasion, this Court should not infer anything different will be likely going forward. Here, that record is concrete and emphatic. Mr. Rabon's violence in the community has left a string of traumatized victims who strongly oppose his release on any conditions. Given the rising tide of violence in the East Bay over recent years and the organized, coordinated, violent conduct at issue here, there is simply too much risk here that this defendant will put the community at risk of further harm.

## **CONCLUSION**

For these reasons, the United States respectfully requests that this Court order this defendant detained pending trial.

DATED: May 2, 2024                                                          Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

　　　　　/s/
JONATHAN U. LEE
Assistant United States Attorney